## BREIDENTHAL v. GROOMS et al.

No. 21192. Opinion Filed Dec. 20, 1932.

Barefoot & Carmichael, for plaintiff in error.

D. M. Cavaness, for defendants in error.

RILEY, J. The parties hereto are in the same relation as in the trial court.

On February 20, 1922, one John Blott was the owner of the land involved in this action, being 100 acres more or less in section 12, township 3N., range 6W., in Grady county. On that date Blott executed a mineral deed to defendants J. T. Grooms, I. K. Grooms, H. A. Furst, W. L. Brittain, and J. A. Brown, conveying an undivided one-sixteenth interest in and to all the oil, petroleum, gas, coal, asphalt, and all other minerals in and under or that might be produced from said land. The consideration expressed in the deed was $500. This deed was placed of record, appearing in Book 180, p. 495, of the records in the office of the county clerk.

Thereafter, on August 26, 1922, Blott executed another mineral deed to the same parties covering an undivided one-half interest in all such minerals, etc., in the same land. In each of said deeds J. T. and I. K. Grooms together received the same interest as each of the other three grantees. The consideration in the second deed was stated

as $500. This deed was recorded September 25, 1922.

On February 8, 1923, J. T. and I. K. Grooms, H. A. Furst, W. L. Brittain, and J. A. Brown, the grantees in the deeds above referred to, executed to Blott, the grantor in said mineral deeds, a quitclaim deed covering said lands, which, after naming the parties, grantors and grantee, and reciting a consideration of one dollar, reads: "do hereby quitclaim, grant, bargain, sell and convey unto John Blott (here describing the land). To have and to hold said described premises unto the said party of the second part, his heirs and assigns, forever." Then follows this clause:

"The intention of this instrument is to release and quitclaim all and any rights acquired by the grantors herein in and to all rights, title and interest they have by virtue of a mineral grant recorded in book 180, page 495, in the office of the county clerk of Grady county, Okla."

This deed was recorded February 9, 1923. On February 12, 1924, said John Blott executed to plaintiff, Willard J. Breidenthal, a warranty deed conveying the land to him subject to a mortgage of $700. This was filed for record March 22, 1924.

On August 24, 1925, H. A. Furst and wife executed a mineral grant purporting to convey to defendants A. D. Todd and A. M. Thompson an undivided one-eighth interest in the oil and gas rights in and under said land. This deed was placed of record September 1, 1925. On the 6th day of October, 1925, plaintiff commenced this action to quiet his title as against the claim of defendants.

It is the contention of plaintiff that whatever interest defendants Grooms, Furst, Brittain, and Brown acquired in the land by virtue of the two mineral deeds, dated February 20, and August 26, 1922, was by them reconveyed to Blott by the quitclaim deed dated February 8, 1923, and that after the execution and delivery of said quitclaim deed, Furst had no interest in the land and could not and did not convey any interest therein to defendants A. M. Thompson and A. D. Todd by the deed of August 24, 1925.

The question depends upon the construction and effect of the quitclaim deed of Grooms et al. to Blott, above referred to. Plaintiff contends that by the plain terms of the granting clause of the quitclaim deed, all the right, title and interest theretofore acquired by the grantors in said quitclaim deed, by virtue of the two mineral deeds theretofore executed by Blott to them, was

to reconvey to Blott, notwithstanding the clause in said deed reading as follows:

"The intention of this instrument is to release and quitclaim all and any rights acquired by the grantors herein in and to all rights, title, and interest they have by virtue of a mineral grant recorded in book 180, p. 495, in the office of the county clerk of Grady county, Okla."

The defendants contend that the intention of the grantors and the grantee therein, and particularly the grantors, was to convey or release to Blott only the one-sixteenth interest theretofore acquired under the mineral grant referred to in the deed; that Grooms et al. in the original deal purchased an undivided one-half interest in the minerals and mineral rights in and under the land, and that by the original mineral grant it was intended to convey such interest, but, by mistake only one-half of the one-eighth "royalty interest" was conveyed by the first deed, and that the second mineral deed from Blott was obtained to correct this error, but that by the second deed a full undivided one-half interest was conveyed without reference to the one-sixteenth interest already owned by them, and that they then held by virtue of the two deeds an undivided nine-sixteenths interest or one-sixteenth more than they had bought and paid for, and that the quitclaim deed was executed for the sole purpose of conveying back this one-sixteenth excess interest only, and that the "intention clause" was placed in the quitclaim deed for the purpose of showing and did show this intention. The trial court found and held that the defendants "did not intend to, and did not as a matter of either law or fact, release their rights" acquired under the mineral deed of August 26, 1922, and rendered judgment for defendants.

Plaintiff relies largely upon a line of cases holding to the common-law rule of construction which regards the granting clause and the habendum and tenendum clauses as separate and independent portions of the same deed, each with a separate function. He contends that the granting clause is clear and unambiguous; that by its terms it conveyed whatever and every shred of interest the grantors had in the land at that time, and that the subsequent clause above quoted could not be construed to in any way change or limit such grant. There are many cases in the earlier decisions which tend to support plaintiff's contention.

By the provisions of section 5258, C. O. S. 1921 [O. S. 1931, sec. 9679], a quitclaim deed made in substantial compliance with

the provisions of the chapter on conveyances, conveys all the right, title, and interest of the maker thereof in and to the premises therein described. Therefore, in the absence of the qualifying clause set out, the quitclaim would have conveyed all the interests the grantors had in the premises at the date thereof. A more modern rule, and that now followed by the greater number of courts, is that the whole deed and every part thereof is to be taken into consideration in determining the intent of the grantor, and clauses in the deed subsequent to the granting clause are given effect so as to curtail, limit, or qualify the estate conveyed in the granting clause. Adams v. Merrill (Ind. App.) 85 N. E. 114, affirmed on rehearing (Ind. App.) 87 N. E. 36; Kendall v. Parsons (Kan.) 105 P. 25; Williams v. Grimm (Ky.) 112 S. W. 839; Hamilton v. Sidwell (Ky.) 115 S. W. 204; Hudson v. Hudson (Ky.) 121 S. W. 973; Condor v. Secrest, 149 N. C. 201, 62 S. E. 921; Smith v. Lindsey, 37 Pa. Super. Ct. 171; Merck v. Merck, 83 S. C. 329, 65 S. E. 347; Pack v. Whitaker (Va.) 15 Va. Law Reg. 606, 65 S. E. 496.

The rule that the instrument as a whole is to be considered is followed in this state. In Barker v. Campbell-Ratliff Land Co., 64 Okla. 249, 167 P. 468, it is said:

"Another cardinal rule of construction is that the grant must be construed to effect the plain intention of the grantor; and if that intention is plain it controls regardless of inconsistent clauses, which are to be reconciled by the intent deduced from the entire instrument [where it is plain from the entire instrument that more is intended to be conveyed than that stated in the granting clause such effect will be given]." Ramey v. Stephney, 70 Okla. 87, 173 P. 72.

In Triplett v. Williams, 149 N. C. 394, 63 S. E. 79, 24 L. R. A. (N. S.) 514, it is said:

"We concede all that is contended for as to the common-law rule of construction, and that it has been followed in this state. But this doctrine, which regarded the granting clause and the habendum and tenendum as separate and independent portions of the same instrument, each with its especial function, is becoming obsolete in this country, and a more liberal and enlightened rule of construction obtains, which looks at the whole instrument without reference to formal divisions, in order to ascertain the intension of the parties, does not permit antiquated technicalities to override the plainly expressed intention of the grantor, and which does not regard as very material the part of the deed in which such intention is manifested."

In Krutzfeld v. Stevenson (Mont.) 284 P.

553, in considering the effect of a clause in a deed subsequent to the granting clause the court said:

"It will be noted that these deeds contain three explanatory clauses inserted between the 'premises,' or granting clause and the habendum, the third of which is the italicized clause under consideration. Considering the deeds as a whole, under the modern rule, these explanatory clauses but make clear the intention of the parties, and should be considered, if divisions are made as a part of the granting clause, and, so considered, may either enlarge or diminish the grant so long as it deals with the identical property or interest described in the granting clause; and likewise, where explanatory clauses are incorporated in the habendum, if the intention of the parties is clearly expressed, the habendum may control over the granting clause, as every deed or contract is supposed to express the intention of the parties executing it, and, when called in question in a court, the first inquiry is as to what that intention was as expressed in the instrument, and it is the duty of the court to carry out that intention, if no legal obstacle lies in the way."

When we consider the clause mentioned, it is apparent that the grantors in the quitclaim deed intended to convey back to Blott that interest and that interest only acquired by them by virtue of the mineral grant therein referred to, namely, the one "recorded in Book 180, p. 495, in the office of the county clerk of Grady county, Okla." Reference to that record discloses that the interest acquired thereby was only an undivided one-sixteenth interest. It is, therefore, clear that the intention of the parties executing the quitclaim deed was to release, quitclaim, and convey to Blott, the grantee, only that interest which had been conveyed to them by the mineral grant referred to in the quitclaim deed. The learned judge who tried the case was correct in holding that the defendants did not intend to and did not as a matter of law release the rights acquired by them under the mineral grant executed by John Blott dated August 26, 1922, and of record in the office of the county clerk of Grady county, in Book 191, at p. 390. The uncontradicted evidence is that they did not, in fact, intend so to do. Furthermore, the evidence shows that plaintiff's agents, who negotiated the purchase of the land for him, knew and understood that defendants claimed to be the owners of an undivided one-half interest in and to the minerals and the mining rights in said land and that Blott so informed the agent before he sold his remaining interest to the plaintiff, and the trial court found that plaintiff

had full knowledge of their claim at the time he purchased the land.

The judgment is affirmed.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and KORNEGAY, JJ., concur. McNEILL, J., concurs in conclusion. LESTER, C. J., and ANDREWS, J., absent.

Note.—See under (1) 8 R. C. L. 1038, 1046, 1047; R. C. L. Perm. Supp. pp. 2374, 2377; R. C. L. Pocket Part, title "Deeds," §§ 100, 101. (2) 8 R. C. L. 1047; R. C. L. Pocket Part, title "Deeds," § 100.